**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

2016 APR 29 P 12: 55

**BEVERLY MILLER**
Plaintiff

CIVIL ACTION:

v.

**EMPIRE EDUCATION
GROUP, BORDENTOWN
NEW JERSEY BEAUTY
SCHOOL**
Defendant

## INTRODUCTION

1. This is a civil action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 USC Section 2000(e) et seq. and the New Jersey Law Against Discrimination, (LAD) N.J.S.A. 10:5-1 et seq. seeking damages against Defendant for committing acts in violation of federal and state laws that guarantee Plaintiff equal protection of the law and freedom from employment discrimination.

## JURISDICTION

2. Jurisdiction over Plaintiff's federal statutory claims for redress, are conferred on this Honorable Court by 28 U.S.C. Section 1343. Federal question jurisdiction is conferred on this Honorable Court by 28 U.S.C.

1

Section 1331 because this action arises under the laws of the United States. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. Section 1367 to adjudicate pendent claims arising under the laws of the State of New Jersey, N.J.S.A. 10:5-1 et seq.

## VENUE

3. Venue is proper in this court under 28 USC 1931(b) because the incidents at issue occurred in New Jersey.

## PARTIES

4. Ms. Beverly Miller is a woman of African American descent. She is employed as a teacher with Empire Education Group. Her place of employment (school) is located in Bordentown, New Jersey. She has been employed since March 7, 2012. Ms. Miller is the only African American cosmetology teacher employed at the Bordentown Empire Beauty School.
5. Empire Education Group is an organization with numerous beauty schools located in New Jersey. Bordentown Empire Beauty School is located in Bordentown, New Jersey. Empire Education Group is located in Pottsville, Pennsylvania. Ms. Beverly Miller was employed at Bordentown Empire Beauty School.

## STATEMENT OF FACTS

6. Ms. Miller is a cosmetologist. She teaches cosmetology classes at Bordentown Empire Beauty school. She is an employee 'at will'. She teaches evening class which include such subjects as hair color, chemical relaxing, perming, hair pressing, hair cutting and more.
7. Ms. Moffitt (white female) is the head administrator of the school. Ms. Jens is the head teacher at the school. Ms. Jens is Ms. Miller's immediate supervisor. Ms. Miller has received performance evaluations as a cosmetology teacher prepared by Ms. Moffitt. Her evaluations have always been good.
8. Ms. Miller has been confronted with a pattern of activity which she has experienced as abusive, offensive and humiliating. The chief administrator of the school Ms. Moffitt has engaged in and encouraged a series of

misrepresentations which have undermined Ms. Miller's employment at Bordentown Empire Beauty school.

9. Ms. Miller is constantly called to Ms. Moffitt's office because of lies being told about her by two co workers. However, Ms. Moffitt never identifies the complainer, never investigates the allegations and seemingly believes whatever is conveyed to her. For example, Ms. Moffitt was told that Ms. Miller was bringing her friends or clients into the school to have their hair done for free. Ms. Miller denied this allegation and asked Ms. Moffitt to investigate. No investigation was conducted. Ms. Miller was warned not to bring friends or clients into the school.
10. Next, Ms. Miller was accused of stealing $15.00 from the school's registers. Ms. Miller again denied the allegation. Again Ms. Moffitt did not conduct an investigation but treated Ms. Miller as if the allegation was true.
11. Later, it was found out that the receptionist Ricky Depaz (white male) was the person who had stolen money from the register and that she was the person who had stated the un-true allegations against Ms. Miller. Rickey Depaz's employment with the school was terminated but Ms. Moffitt's never apologized to Ms. Miller.
12. Shortly thereafter, Ms. Miller was required to post grades for the students on the Empire computer system. The grades are filed in a system known as progress charts. Although all teachers must post grades on the system, the system is complicated and a teacher can only file the grades appropriately if he or she has been trained on the system.
13. When Ms. Miller was hired at Empire she was not trained to file the grades, even though she was promised that training would be forthcoming. When time came to file grades for the fall of 2012 Ms. Miller asked her immediate supervisor Ms. Jen (white female) to assist her in filing her grades on the computer.
14. When Ms. Miller made the request to Ms. Jen it was early evening. Ms. Jen did not respond to Ms. Miller's request. Ms. Miller asked her 4 or 5 times later in the evening to assist her in filing the grades on Empire's electronic system. In the meantime, Ms. Miller struggled on her own to file the grades on the electronic system. Ms. Miller and Ms. Jen were still at the school near midnight, 12:00 pm when Ms. Jen finally decided to help he and told her that she needed to get training. Ms. Miller doesn't believe that this type of treatment is given to any other teacher at the school.
15. Ms. Miller called Ms. Moffitt the next morning to tell her what happened the previous night with Ms. Jen and she informed Ms. Miller that Ms. Jen had informed her that Ms. Miller had failed to submit her grades on the computer. When Ms. Miller confronted Ms. Jen and asked her why she told

3

Ms. Moffitt that she had not filed her grades on the computer, she told Ms. Miller that when she spoke with Ms. Moffitt, Ms. Moffitt told her she should have left that evening and not assisted Ms. Miller. Ms. Miller was dumbfounded.

16. In March 2013 Ms. Miller agreed to hold a birthday celebration during my evening class by presenting a cake to the student with the birthday. This was common practice at the school. A student reminded her of the upcoming celebration during a cell phone call and she invited him to come and get her ShopRite card and to go purchase the cake. (Ms. Miller maintained a ShopRite shoppers Gift card for such occasions) On of the teachers overheard her conversation with the student and reported to Ms. Moffitt that Ms. Miller agreed to loan her car to the student to pick up the cake from ShopRite. When Ms. Moffitt saw Ms. Miller later she asked her to come to her office and asked Ms. Miller if she had loaned a student her car and rebuked her for violating the Empire "no fraternization with students" policy. Ms. Moffitt never considered the fact that the ShopRite was in the same shopping center in which the school was located in and that a student did not need to use a car to pick up the cake. Ms. Moffitt's accusation, without thinking, was very hurtful to Ms. Miller.

17. In April 2013 one of the teachers attempted to influence Ms. Miller to make a false accusation against the daughter of one of the long standing faculty members at Empire Beauty School by fabricating a story that the daughter was seen going into Ms. Miller's pocketbook which she left in the teachers room. The daughter of the faculty member was in the teacher's room because she had for years driven her mother to the school and picked her up. All of the teachers knew the teacher's daughter. Ms. Miller refused to go along with the false accusation. Ms. Moffitt suspended the young lady from entering the school. This caused Ms. Miller to feel guilt about the entire episode.

18. On another occasion Ms. Moffitt wrongfully accused Ms. Miller of yelling at a student and bringing her to tears for using gloves to wash a women's hair. Ms. Jen, Ms. Miller's supervisor told Ms. Moffitt about this and accused Ms. Miller of making a racist comment about the situation.

19. She accused Ms. Miller of saying that "when a person comes and is infected with lice you (white) teachers go ahead and wash their hair but when a person of color has lice you make the student wear gloves'. The student involved in the incident was an Indian American student who did not know the protocol for the school. Ms. Moffitt never investigated this matter and never discussed it with the student. She simply took Ms. Jen's false accusation and ran with it.

20. Ms. Moffitt, in an attempt to unsettle Ms. Miller, stated to her that students had come to her and informed her that they weren't learning anything in Ms. Miller's class. Ms. Moffit told Ms. Miller that students objected to her use of quotes in her class.(Ms. Moffitt disregarding the fact that Empire, when training teachers for employment at the school, encourages them to use quotes along with the lessons.)
21. Ms. Moffitt accused Ms. Miller of have the worst attendance of any teacher at the school. This was totally false.
22. Ms. Moffitt told Ms. Miller that students had complained to her that they were afraid of Ms. Miller. Also, this was totally false
23. Ms. Miller filed a complaint with the Empire's Corporate Human Resources Office (HR) on May 25, 2013 and requested that HR take some action to stop the abuse, misrepresentation and other offensive actions of Ms. Jen and Ms. Moffitt. A meeting was held to discuss the situation. However, no follow up action was taken by HR and the situation is tense and unremitting as ever.
24. Since Ms. Jen learned about the letter to HR, Ms. Jen no long speaks to Ms. Miller. Giving Ms. Miller the silent treatment is her response to the meeting and conversation held with HR corporate.
25. One of the teachers asked Ms. Moffitt if she could have someone cover her because she needed a day off. Ms. Moffitt told her that there was no one to cover for her. The teacher asked Ms. Moffitt if Ms. Miller was available to cover for her. Ms. Moffitt's response was belligerent, "I said there is no one to cover for you".
26. These petty abusive and humiliating actions represent a continuous pattern of the abusive and hostile actions directed at Ms. Miller by Ms. Moffitt and Ms. Jen at Bordentown Empire Beauty School. The actions have altered the working environment for Ms. Miller and have undermined her enjoyment and effectiveness at the job.
27. Ms. Miller was terminated from the Bordentown Empire Education Groups Beauty School on August 23, 2013. Empire Beauty School then assigned another employee, Ms. Renee Mulhurn (while female) to replace Ms. Miller.

## COUNT I
### HOSTILE ENVIRONMENT AND WRONGFUL DISCHARGE
### DISCRIMINATION BASED ON RACE
### 42 U.S.C. Section 2000e-2(a)(1)

28. Plaintiff incorporates by reference paragraphs 6 through 27 as if fully set forth herein.
29. Defendants intentionally denied Ms. Miller the same rights and protections guaranteed by Title VII of the Civil Rights Act of 1964 to the equal benefits of all laws and proceedings for the security of persons and property, as is provided to white co-workers. Defendants intentionally violated Ms. Miller's right to be free from continuous abusive, offensive and humiliating actions and patterns of actions designed to offend and humiliate him. Defendants engaged in A pattern of actions that altered the terms and conditions of Plaintiff's employment.
30. Defendants refused to address the instant issue of disparate treatment and any other adverse employment actions.
31. The actions taken by Empire Education Group denying Ms. Miller freedom from biased and wrongful actions and race based harassment was done because of Ms. Miller's race and because of her history of filing a complaint under federal employment law and was designed to frighten her and influence her against filing a discrimination complaint.
32. There is a direct nexus between Defendants actions and decisions and Plaintiffs refusal to work at an unsafe worksite. There is also a direct nexus between the abusive, hostile and offensive actions of Defendant and Plaintiffs loss of a positive productive and gainful experience at her place of employment.
33. As a direct and proximate result of the actions of Empire Education Group management, Ms. Miller has suffered lost wages and other economic losses and other compensation such as benefits and contributions to her pension funds and will continue to suffer severe damages and injuries including, but not limited to, humiliation, loss of self-esteem, embarrassment, hurt, fear, frustration, emotional distress, inconvenience and damage to her professional reputation.

**WHEREAS**, Plaintiff demands judgment against Defendant and the following relief:

a. An award of equitable relief for lost wages, compensation, future lost earnings, economic losses, pre and post judgment interest and any other affirmative relief that may be deemed appropriate at trial; and

b. An award of non-pecuniary compensatory damages for the emotional injuries are suffered as a direct result of Defendant's unlawful conduct including, but not limited to, humiliation, loss of self-esteem, embarrassment, hurt, fear, frustration, emotional distress, inconvenience and damage to her professional reputation; and

c. An award of the disbursements, costs, expenses, expert witness fees' incurred by Plaintiff in bringing this action; and

d. Such other relief as the court deems proper and just.

## COUNT II
## HOSTILE ENVIRONMENT AND WRONGFUL DISCHARGE
### DISCRIMINATION BASED ON RACE
### N.J.S.A. 10:5 – 1 et seq.

34. Plaintiff incorporates by reference paragraphs 6 through 27 as if fully set forth herein.
35. Defendant Empire Education Group intentionally denied Ms. Miller the same rights and protections guaranteed by the New Jersey Law Against Discrimination (LAD) to the equal benefits of all proceedings for the security of persons and property as enjoyed by white co-workers. Defendant Empire Education Group intentionally violated Ms. Miller's right to be free from continuous abusive, offensive and humiliating actions and patterns of actions designed to offend and humiliate her. Defendants engaged in actions that altered the terms and conditions of Plaintiff Ms. Miller's employment. Empire Education Group denied her request to end the abusive conduct and treatment and then wrongfully terminated her.
36. Defendant Empire Education Group requested to address the issues of abusive, offensive and humiliating conduct by managers and reprisal and other actions in the workplace that undermined Plaintiff Ms. Miller's performance.
37. There is a direct nexus between Defendant's actions and decisions and the termination of Ms. Miller's employment. There is also a direct nexus between the abusive, hostile and offensive actions of the Defendant and Plaintiff's loss of a positive, productive and gainful experience at her place of employment.
38. As a direct and proximate result of the actions of Empire Education Group management. Ms. Miller suffered lost wages and other economic losses and other reductions in compensation such as benefits and contributions to her pension funds and will continue to suffer severe damages and injuries including, but not limited to, humiliation, loss of self esteem, embarrassment, hurt, fear, frustration, emotional distress, inconvenience and damage to her professional reputation.

7

**WHEREAS**, Plaintiff demands judgment against Defendant Empire Education Group and the following relief:

a. An award of equitable relief for the lost wages, compensation, future lost earnings, economic losses, pre and post judgment interest and any other affirmative relief that may be deemed appropriate at trial; and

b. An award of pecuniary compensatory damages for the emotional injuries suffered as a direct result of the Defendant's unlawful conduct including, but not limited to, humiliation, loss of self-esteem, embarrassment, hurt, fear, frustration, emotional distress, inconvenience and damage to her professional reputation; and

c. An award of the disbursements, costs, expenses, expert witness fees, incurred by Plaintiff in bringing this action; and

d. Such other relief as the court deems proper and just

## COUNT III
## RETALIATION
## 42 U.S.C. Section 2000(e)-3(a)

39. Plaintiff incorporates by reverence paragraphs 6 and 27 as fully set forth herein
40. Defendant denied Ms. Miller a fair and equal workplace which guaranteed her equal protection and enjoyment of the laws
41. Plaintiff engaged in protected activity under this act when she filed a charge of discrimination with the Equal Employment Opportunity Commission in 2014 and when she filed an internal complaint of discrimination with Empire Education Group's Human Resources Department.
42. Plaintiff was terminated by Empire Education Group in August 2013.
43. Defendant's reasons for terminating Ms. Miller's employment is not believable and are false. Defendant hired an employee to replace Ms. Miller who was not a member of Ms. Miller's protected class.
44. As a direct and proximate result of the termination of her employment by Defendant, Plaintiff suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other compensation and will continue to suffer severe damages and injuries including by not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress, inconvenience and damage to her professional reputation.

8

**WHEREAS,** Plaintiff demands judgment against Defendant for this following relief:

a. An award of equitable relief for the lost wages, compensation, future lost earning, economic losses, pre and post judgment interest and any other affirmative relief that may be deemed appropriate at trial; and

b. An award of non-pecuniary compensatory damages for the emotional injuries suffered by Ms. Miller as a direct result of Defendant's unlawful conduct including but not limited to , humiliation , loss of self-esteem, embarrassment, hurt, fear, frustration, emotional distress, inconvenience, damage to her professional reputation; and

c. An award of disbursement, cost, expenses, expert witness fees and attorney's fees incurred by Plaintiff in bringing this action; and

d. Such other relief as the court deems proper and just.

## COUNT IV
## RETALIATION/REPRISAL
## N.J.S.A. 10:5 – 1 et seq.

45. Plaintiff incorporates by reference paragraphs 6 through 27 as is fully set forth herein.
46. Defendant denied Ms. Miller a non abusive workplace and the opportunity to work constructively without fear, intimidation, ridicule, upset, humiliation and oppressive disturbance.
47. Defendant intentionally violated Ms. Miller's right to be treated in an equal manner with other workers and denied her right to enjoy equal protection under the law because of her race. Plaintiff understood and experienced Defendant's conduct as abusive, humiliating and offensive.
48. Defendant's conduct made it impossible for Ms. Miller to work in a safe and secure environment. Even though Ms. Miller participated in the Equal Employment Opportunity Commissions process by filing a charge of discrimination Defendant made it nearly impossible for her to continue her employment. Defendant terminated her employment in total disregard of her positive performance achievements. Her engaging in filing a charge of discrimination with the EEOC was the proximate cause of her discharge.

There was o legitimate explanation for Defendant to discharge Plaintiff from her employment.

49. Because of Defendant's actions Ms. Miller suffered humiliation, fear, intimidation and was greatly dismayed about pursuing the EEOC process because Defendant took her job. She became more fearful of ever complaining about the abuse and humiliation she experienced while being employed at Empire Education Group's cosmetology school.

**WHEREFORE**, Plaintiff demands judgment against Defendant for the following relief:

a. An award of equitable relief for the lost wages, lost compensation, future lost earning, economic losses, pre and post judgment interest and any other affirmative relief that may be deemed appropriate at trial; and

b. An award of pecuniary compensatory damages for the emotional injuries suffered by Ms. Miller as a direct result of Defendant's unlawful conduct including but not limited to, humiliation, loss of self-esteem, embarrassment, fear, hurt, frustration, emotional distress, inconvenience, and damages to her professional reputation.

c. An award of disbursements, costs, expenses, expert witness fees and attorney's fees incurred by Ms. Miller in bringing this action; and

d. Such other relief as the court deems proper and just.

*Clifford G. Stewart*
Clifford G. Stewart, Esq.
The Law Office of C. Gregory Stewart
535 Thirteenth Avenue
Newark, New Jersey 07103
(973)-474-6062
cgregorystewart@gmail.com